May it please the Court, I am John Sampson again, Assistant Attorney General representing the respondent appellant in this case. I would like to reserve approximately five minutes for rebuttal. The district court in this case erred in granting habeas relief. The court granted relief on two claims. First, the district court found a violation of Brady v. Maryland because the prosecution allegedly failed to disclose the whereabouts of Mr. Smith in another state. And second, the district court found a confrontation violation based on arguments of counsel in closing argument that allegedly linked a co-defendant's confession to Mr. Bailey. Counsel, just as a conceptual matter, and there's also a cross-appeal with some of the other alleged grounds of error, conceptually, if we were to find any one basis for habeas relief, would we even have to reach any of the remaining issues? In other words, once there's a new trial, isn't that sort of the end of the discussion? That is correct, Your Honor. I believe one of the claims, although we've argued that it was waived, in effect, since the counsel on appeal would not result in reversal of the conviction. But I believe all the other claims on their own would result in reversal of the conviction. And let me ask you specifically about the Bruton claim. And I'm speaking only for myself now with this concern, but I would appreciate your addressing it. The statement that dealt with the Mansfield homeboy comment, isn't that so specifically a reference to the defendant as in the context of this particular trial, that he was the only one who was testified about who met that description, that it was practically the same as using his name? Your Honor, I would submit that it is not the same. And the reason it is not the same is that there were several references to homeboy and references to members of the Mansfield gang. In fact, in the redacted confession, which is found in particular pages 128 through 131 of the Supplemental Excerpts of Record, the term homeboy was used to refer to many people, including Baby Puppet, Dante, who was also known as D-Dog, and then another person who was mentioned several times as a homeboy was Sean Renfro. Were any of them Mansfield? I believe that they were. I believe at least two of them were. And in any case, what the statement regarding the homeboy and then for Mansfield gang, what the detective was asking Mr. Youngblood was, because I believe Mr. Youngblood used the term homeboy, and then the detective in the interrogation was clarifying what he meant by homeboy. The term homeboy, Mr. Youngblood immediately referred to Baby Puppet, and then there was also references to Dante and D-Dog. It looked to me like the statement had been made that I don't want to identify a Mansfield homeboy. That was redacted from the statement. But then the policeman had made an inquiry, like, what do you mean by homeboy? So when I read what the jury got, frankly, I had some trouble figuring out what would that mean to them. It seemed like something was missing there. In other words, it wasn't a statement of the co-defendant saying it was a Mansfield homeboy who was there. It was a question from the interrogator, as I read it, saying what's a Mansfield homeboy or something like that. Do I have that right? I believe you do, Your Honor. I believe that's a reasonable interpretation of what was said. And the fact is, is that because the redacting confession did not expressly implicate Mr. Bailey, that renders that confession properly admitted under Richardson v. Marsh. It has to expressly implicate the defendant in order for there to be a confrontation violation. Now, am I right that the district court here held that the redacted confession did not violate the Bruton principle, but standing alone, but that it did by virtue of the arguments made by the prosecutor and the defense counsel? Yes, Your Honor. The district court said that the redacted statement was proper under the confrontation clause. It did not violate Bruton itself. It was only the arguments of counsel that allegedly linked it to Mr. Bailey that resulted in a confrontation violation. And the U.S. – United States Supreme Court has never held that arguments of a prosecutor and arguments of co-counsel, co-defendant's counsel are sufficient to create a confrontation violation. And that is the claim before this Court, a confrontation violation under the Sixth Amendment. There are only three cases cited by Petitioner, Bruton itself, Richardson v. Marsh, and Gray v. Maryland. And none of those cases hold the rule that the district court applied, and none of those cases said that arguments of counsel render properly redacted and admitted confession a violation of the confrontation clause. And, in fact, Richardson suggests the opposite. Richardson says when you have a statement that does not expressly implicate the defendant and there is a proper instruction not to consider this confession against the defendant, there is no confrontation violation. The trial court repeatedly instructed the jury, do not consider Mr. Youngblood's statement against Mr. Bailey. The prosecutor repeatedly reminded the jury, do not consider Mr. Youngblood's statement only against Mr. Youngblood. Do not consider it against Mr. Bailey. And, in fact, the one statement that Mr. Bailey complains the most about is the prosecutor's statement where he was referencing testimony by Jerry Woolman. The prosecutor said, and this is supplemental excerpts of record 271 through 72, the And the rule applied by the district court was not clearly established Federal law. Moving on to the Brady violation, unless the Court has further questions on the confrontation       It is pure speculation that the phone number and address, or the information that was allegedly suppressed, was the address and phone number of the mother of Mr. Smith. She was not a witness to this case. Mr. Smith was not a witness to this case. The address and phone number is not information that falls within the parameters of Brady v. Maryland. It is pure speculation that that phone number and address would have led to further information that could have proved to be useful to the defense in this trial. Mr. Smith has submitted an affidavit denying all the facts that Mr. Bailey says he would have testified to if he had been called to testify at trial. The trial court ruled that even assuming the truth of all these allegations, even assuming that the glasses were Mr. Smith's and that he was involved in drugs and that he had fights with the victim, even assuming all that, this evidence was not admissible under the other suspect method for presenting other suspect evidence because they did not lay a proper foundation. The trial court would have excluded this evidence even if the phone number and address had been disclosed. Therefore, there is no Brady violation. The one important part about those glasses that Mr. Bailey relies upon is that the glasses were not found in the murder scene. They were not found in the apartment with the bodies. The murder occurred at 245 Montgomery. The glasses were found at 231 Montgomery. So as the trial judge said, that even if you could connect these glasses to Mr. Smith, and they have not done that, but even if they could, it doesn't put him in the apartment or even at the apartment. It puts him down the street at some time. He could have lost the glasses a week before. His own testimony under oath is that he lost his glasses while in the Navy and that the glasses found at the scene were not his. Mr. Kitchen, the prosecutor-investigator, visibly compared the glasses found at 231 Montgomery with Mr. Smith's current prescription and noticed that the glasses found at 231 Montgomery were visibly thicker than the glasses that Mr. Smith had. The evidence is that those were not his glasses. Because the evidence would not have created reasonable probability that the jury's verdict was different, there was no Brady violation. Even if the district court did not agree with the state court's adjudication and thought that an error had occurred, but what's important is whether the state court adjudication was objectively reasonable application of Supreme Court case law, and it was, and for that reason, habeas relief must be denied. We would ask the Court reverse the order granting the writ habeas corpus and direct the district court to deny the petition. Thank you. Thank you, Your Honor. Zuckerman. Thank you, Your Honors. David Zuckerman representing Ernest Bailey. I'm going to focus on the Confrontation Clause issue, if I may. This is a case in which the Court has to consider or should consider the totality of the way that Mr. Youngblood's statement was used against Bailey, and not merely focus on some isolated aspects of the trial as I believe the state courts did. Counsel, I do want to focus on one isolated question, though, and that's returning again to my question about SCR-129 and the statement that Youngblood had to leave town because of one of his Mansfield homeboys. Opposing counsel has said that that actually could have referred to two or three different people, not just to your client. Is that correct? Were there other Mansfield homeboys that had been testified about to that point that it could have referred to, or were others only involved in Acacia or I forget what the third one was called? Your Honor, there is in Youngblood, in a very different part of Youngblood's statement, in a completely different context, there is a mention of other Mansfield crips. That's in the context of a month after the incident when Youngblood was arrested in Los Angeles. Who was he hanging out with at that time? And he was mentioning, yes, a couple of people from my gang. The key here, though, is that there was never any suggestion that those guys could have had anything to do with the killings in Bremerton, Washington. The part that I'm quoting, which is at page 13 of my brief, is in the part where he says, well, I was going to leave, but I was pushed because of who I know and how they're going to know I'm in – I was involved because they can associate me with these people. Now, it's true. In the redacted version, there's this sort of awkward jump. And I thought the question that Judge Graber just asked you was referring to the statement that was cut out by redaction. So maybe I'm – in other words, the statement, I've got to leave because a Mansfield homeboy was involved or whatever, that was deleted from the statement. Well, and as redacted – I'm sorry, Your Honor. Then you get the question from the officer. I found it very confusing, but I – at least just speaking about myself, I'm not able to read that statement as redacted in the way that Judge Graber is apparently reading it. Well, Your Honor, though, even as redacted, it is quite clear from the statement Youngblood is saying, well – I'm going to leave because of who I know and what my record is. Right. But much more specifically, that they can associate me with the people who did it because they're my friends, they're my associates. But he's not – but it seemed to me as redacted, he's not saying that I've got to leave because a Mansfield – they can associate me with a Mansfield homeboy who did it. Well, I don't know – If you think it reads that way as the jury would hear it, you know, explain it to me. Well, why else would the detective then immediately say homeboy? Now, that means what? If we could keep in mind – Well, I don't want to be argumentative. All right. As I said, I found it confusing. When the detective said that, there's no reference for the jury that there's been a redaction, as I understand it. So it just goes from one – the statement, I have to leave because of who I know and my record, to the question, what's a homeboy or something. And I – I don't see the inference that the jury would know that the who he knows was a homeboy. And I will move on, Your Honor. I note the jury was told in this case that the statement had been altered by legal rulings, and as in Gray, as in Gray as well, the judge would immediately follow that by saying, and I urge you only to consider this against Youngblood, which, as the Supreme Court noted, actually exacerbates the problem. If you tell the jury we've altered the statement, and by the way, don't consider it against Bailey. By the way, I saw in the briefing the argument that the jury was told the statement was altered, but I didn't really see in what I reviewed of the record that the jury was told the statement has been altered by the judge. I thought the judge said something like, you know, I've improved – the statement's been improved by my rulings or some ambiguous thing. I wouldn't know what that meant either. But at least specifically, I didn't see it. If there is a citation to where the judge said I've redacted the statement, I'd like to know where it is. He didn't say redacted. He said I've made legal rulings in regard to the statement. Right. But where did he say any place I've made legal rulings that have altered the statement, the text of the statement? Because I didn't see that, and so I'm missing a little bit of this. Not exactly, although I do – I believe I also cite to the cross-examination by co-defendant's counsel of the detective where he brings out that the statement is not – he is not testifying to giving Youngblood's actual words. Counsel, I need to clarify something about the excerpts and the record itself. The material that appears at supplemental excerpt of Record 129, and it's from the transcript, page 5258, is that – I understood that to be the redacted version as read into the record to the jury between Detective Oakley and Brian Moran. Am I correct or incorrect about that? Correct. And so if that is correct, it does mention the Mansfield gang, if I'm reading that right. Well, yes, it mentions, you know, the homeboy, he's from the same gang, the same gang in Mansfield. That is what was read to the jury. So that is what was read to the jury. And I think perhaps I'd better leave my game plan here and get to the punchline in the interest of time. I think if nothing – I'll get back to other points if I may. If nothing else, the co-defendant's argument, the co-defendant counsel's argument in itself made any efforts to comply with Bruton a farce in this case. I mean, when Youngblood's counsel stood up in front of the jury, she said, Bailey and Campbell committed the crime. Youngblood told the truth to the detectives when he said, I left because they can associate me with Bailey and Campbell. I mean, she told the jurors that Youngblood had been referring to Bailey and Campbell when he made his statement to the detectives. That makes this case really on all fours with Bruton. And by the way, the State court agreed that argument was improper, but it said, well, I'm going to deny the mistrial motion because my limiting instruction cures that. Well, Bruton says it can't. And there's really no difference between this case and Bruton, whether you have the statement presented initially saying Bailey and Campbell did it or whether you have the statement saying, well, someone did it or my associates did it, but then you have a knowledgeable person, Youngblood's lawyer, stand up and tell you that someone he was referring to is Bailey and Campbell. It's no different in any material way from Bruton. Further, it's actually worse than what happened in Gray v. Maryland, in which the Supreme Court also said that we must have – that a limiting instruction cannot cure the problem. Because after all, in Gray, no one ever actually said the co-defendant's statement implicated the defendant. It was always deleted, being mentioned. But nevertheless, because the jury could so easily have inferred the deletions must have meant the defendant, that brought us within the Bruton rule. Well, what happened here is a lot worse than that. We have these neutral pronouns, maybe, but if it wasn't already apparent to the jury, the co-defendant's counsel expressly saying those referred to Bailey clearly brings us within the rule of Bruton and Gray. There's a lot of force to that argument, but then how do you reconcile that with the clearly established requirement that the violation be a clearly established law as determined by the Supreme Court? What's the case of the Supreme Court that would support that when the counsel Your Honor, I discussed that beginning at page 28 of my brief. As the U.S. Supreme Court has stated, some rules are of general application. And it is unreasonable, as the U.S. Supreme Court has said, it is unreasonable for a State court to fail to extend a rule announced by the Supreme Court in a setting where it must clearly apply. Now, the U.S. Supreme Court, by the way, has applied its confrontation rule in settings where it is merely the actions of the prosecutor, for example, that cause the problem. That's Douglas. The U.S. Supreme Court has also announced in Donnelly v. DiCristoforo, for example, that arguments of a prosecutor can violate a specific constitutional right even if the testimony itself did not. For example, violating the right to remain silent. I note that the second Would that be a due process rather than a confrontation violation? No, Your Honor. If an argument is merely offensive in some way, it's analyzed under the general due process rubric, and you have to meet this high standard of it's so infected the trial with unfairness. But when it's targeted at a specific right of the defendant, as in Chapman, for example, you know, you should infer the defendant is guilty because he didn't testify. That is analyzed under the Fifth Amendment right to be free from self-incrimination. The Second Circuit in Ryan v. Miller had no difficulty extending the Bruton rule to a situation where the co-defendant's statement was not even directly introduced in the trial at all. Is that a deeper case? Yes. Yes, it was. I mean, very expressly, they analyzed, and I cite that at page 28 of my brief, they expressly analyzed a defect and analyzed the fact that it would be unreasonable to fail to extend the rulings of Bruton and Gray in that setting. And I'd note, of course, that this Court, for example, in Green v. Lambert, had no trouble extending the right, for example, of a to present a defense to the right to present dissociative identity disorder. Obviously, there's no U.S. Supreme Court case that deals with a dissociative identity disorder. Every case is going to be different on its specific facts, but I think it would be – I think the State's argument, frankly, would lead to absurdities. I mean, by their reasoning, we could have a trial where the prosecutor just gets up and says, well, we replaced – you heard of that statement with all those neutral pronouns. We just did that to comply with some Supreme Court decisions. But really, I bet you figured out already that we were really talking about Ernest Bailey, and I'd urge you to ignore the judge's limiting instruction and convict Bailey because of the co-defendant's statement. Well, under Mr. Sampson's reasoning, that doesn't violate clearly established U.S. Supreme Court law, and therefore, this Court could not grant relief. I would suggest that what happened here is equally bad. If I see my time is – I'd like to jump to just one last point about Youngblood's statement. It's also the fact that it was offered for the express purpose, in part, of showing that Youngblood had guilty knowledge of the names of the perpetrators because he said to the detective, well, I left town after I heard the names of the suspects released on TV. Well, as both the detective and the prosecutor gleefully pointed out to the jury, Youngblood slipped up. The names of the suspects had not been released to the public at the time that Youngblood left town. They weren't released until the prosecutors obtained warrants for the suspects. What other conclusion could the jury reach from that other than that Youngblood had named Bailey and Campbell? After all, why would the prosecutor be pointing this out if Youngblood had said, well, John Smith did it? And wouldn't Youngblood's lawyer and Bailey's lawyer be jumping up and down, you know, on cross-examination saying, well, yeah, but Youngblood was mistaken? I mean, you know, he thought that John Smith did it, but you guys don't believe that person did it. In fact, this is a case that was tried solely on the theory that Bailey, Youngblood and Campbell were the three people who did it. They charged a conspiracy involving those three people. Youngblood's statement actually names Campbell to the jury at some points and says and mentions another person. Even the densest juror could reach no conclusion other than that Youngblood had incriminated Bailey. In conclusion, I think this case is not a close call on confrontation. For any one of those reasons, the Court could find that a confrontation violation occurred, and it should, therefore, affirm the district court. Thank you, Your Honors. Thank you very much. Mr. Butler. Thank you, Your Honor. Very briefly, the Petitioner relies on the Douglas case and the Donnelly case. Those are both due process claims under the Fifth and Fourteenth Amendment. He has not raised a due process claim before this Court or the district court, and under this Court's case of Tamalini v. Stewart, it is too late for him now to change the amendment that he's relying on from the Sixth to the Fourteenth Amendment. There simply is no holding of the United States Supreme Court that the arguments of the prosecutor and, as Mr. Bailey's counsel points out, what he really focuses on is the arguments of co-defendant's counsel. There's no Supreme Court case law saying the argument of co-defendant's counsel is a confrontation violation. The Ms. Mandel, who was Mr. Youngblood's attorney, did not expressly get up and say, the references to Homeboy and Mansfield, that's Mr. Bailey. She did not do that. The prosecutor did not get up and say, you've heard all these statements. What we're really referring to is Mr. Bailey. There was never any statement such as that. This was statements that at the most indirectly linked Mr. Youngblood's statement to Mr. Bailey. And as the Supreme Court held in Richardson v. March, if you have a properly redacted statement and a properly limiting instruction, the fact that the statement is later linked to the defendant through other evidence is not a confrontation violation. The State Court's decision was reasonable. And even if this Court believed a constitutional error occurred, that is not enough to grant relief. Because it was an objectively reasonable application of case law, Petitioner is not entitled to habeas relief. And finally, Your Honors, on page 129 of the supplemental excerpts of the record, it does refer to the Mansfield, but it does not expressly refer to Mr. Bailey as that particular Mansfield gang member. This was not a gang of two people. The jury could say, who knows which of the ones he's referring to.  And that's why I'm asking you what's your response to opposing counsel's argument that the references to other members of the Mansfield gang had to do with much later events that couldn't possibly be linked to the actual commission of the crime? Your Honor, the question is, though, is the detective was asking Mr. Youngblood, homeboy, what do you mean by homeboy? He was talking about the time when he left town and why he left town. Right. Had there been any testimony about other members of the Mansfield gang with whom he had interacted at that time as distinct from a month later or some other time later? I'm not sure if there was or was not. But even the statement, homeboy from Mansfield gang, was not a direct reference to the person with me. The killer was a homeboy from Mansfield gang. So even that statement doesn't limit itself to the person he was with at the time of the crime. So while there may not have been other Mansfield crips with him at the killing, the statement doesn't so directly tie to Mr. Bailey because it really doesn't refer to the killing itself. There's no statement such as was in Bruton which directly implicates Mr. Bailey. It's such a – Did he really need that statement? Did he need – no, Your Honor. Did you need it in evidence? No. Why did you put it in? I was not the prosecutor. I don't know – Just to give us more business. I'm sorry? Just to give us more business. I'm sure that no matter what's put in, there will always be business for the court to review. The fact is that we did not – You know, you're always skating on thin ice when you get Bruton out there. So why – I just wonder why a prosecutor would do that. Well, Your Honor, as Richardson, as the Supreme Court stated in Richardson, there are several reasons why statements of co-defendants must be admitted. Judicial economy of resources, to avoid having multiple witnesses come in and have to testify at two different trials, and to avoid inconsistent verdicts. That's why the State – there will be times when a State needs to admit a redacted confession in cases involving multiple defendants. Was that the case here? It was. There were three defendants. There had already been a prior trial. This was the second trial. The prior trial involving Mr. Youngblood and Mr. Campbell. This being another trial involving Mr. Youngblood and Mr. Bailey. So there were many reasons why the court wanted to avoid having multiple – additional multiple trials. So those other trials, they – what happened to those? Mr. Campbell was convicted. Mr. Youngblood, there was a hung jury, and so they retried him, and they ended up retrying Mr. Bailey because he had been apprehended at the time, and they were able to hold the hearings at the same – or the trial at the same time. Unless the Court has further questions, I thank you for your time. Okay. Thank you very much. And the Court will adjourn until 10 a.m.
judges: Pregerson, Graber, Gould